**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

MIRANDA SANDERS,

                                    Plaintiff,                    1:22-cv-01154 (BKS/ATB)

v.

CITY OF SARATOGA SPRINGS, SARATOGA CASINO
HOLDINGS, LLC, SARATOGA CASINO HOTEL,
EDWARD MOORE, EILEEN COTTER, and
KRISTOPHER CAMARRO, Saratoga Springs Police
Officer,

                                    Defendants.

**Appearances:**

*For Plaintiff:*
Brian C. Mahoney
Caitlin E. O'Neil
Lippes Mathias LLP
50 Fountain Plaza, Suite 1700
Buffalo, NY 14202

*For Defendants Saratoga Casino Holdings, LLC and Saratoga Casino Hotel:*
David M. Cost
Barclay Damon LLP
80 State Street
Albany, NY 12207

*For Defendants Moore and Cotter:*
Kevin P. Burke
Burke, Scolamiero & Hurd LLP
7 Washington Square
Albany, NY 12205

**Hon. Brenda K. Sannes, Chief United States District Judge:**

### MEMORANDUM-DECISION AND ORDER

## I.      INTRODUCTION

Plaintiff Miranda Sanders brings this action under 42 U.S.C. § 1983 and New York law against Defendants City of Saratoga Springs, Saratoga Casino Holdings, LLC, Saratoga Casino Hotel, Edward Moore, Eileen Cotter, and Kristopher Camarro. (*See* Dkt. No. 1). Defendants Moore and Cotter move to dismiss the Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). (Dkt. No. 21). Defendants Saratoga Casino Holdings, LLC and Saratoga Casino Hotel (collectively, "Casino Defendants"), who answered the Complaint, move for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c). (Dkt. No. 28).[1] Plaintiff opposes Defendants' motions and cross-moves for leave to file an amended complaint. (Dkt. No. 33; *see* Dkt. No. 33-2 (proposed amended complaint ("PAC"))). Moore, Cotter, and Casino Defendants (collectively, "Moving Defendants") oppose Plaintiff's cross-motion to amend. (Dkt. Nos. 42, 43). For the following reasons, Moore and Cotter's motion to dismiss is denied, Casino Defendants' motion for judgment on the pleadings is granted in part and denied in part, and Plaintiff's motion is granted in part and denied in part.

---

[1] Casino Defendants also move to join Moore and Cotter's Rule 12(b)(6) motion to dismiss Plaintiff's Complaint because Casino Defendants' liability is "solely [based on] vicarious [liability for] Moore and Cotter's actions." (Dkt. No. 28-2, at 10–11). Because Casino Defendants filed an answer prior to filing their motion to join, (Dkt. No. 19), they cannot join Moore and Cotter's Rule 12(b)(6) motion, *see Moore v. Shahine*, No. 18-cv-463, 2019 WL 948349, at *2, 2019 U.S. Dist. LEXIS 31387, at *3 (S.D.N.Y. Feb. 27, 2019) ("Under the unambiguous, mandatory language of Rule 12(b), a motion to dismiss for failure to state a claim must be made before an answer is filed."). Nonetheless, because the Rule 12(b)(6) and Rule 12(c) standards are "identical," the Court will incorporate the arguments raised in Moore and Cotter's Rule 12(b)(6) motion into Casino Defendants' Rule 12(c) motion. *Lively v. WAFRA Inv. Adv. Grp., Inc.*, 6 F.4th 293, 301 (2d Cir. 2021); *see Patel v. Contemp. Classics of Beverly Hills*, 259 F.3d 123, 126 (2d Cir. 2001) (finding that "a motion to dismiss for failure to state a claim . . . that is styled as arising under Rule 12(b) but is filed after the close of the pleadings[] should be construed by the district court as a motion for judgment on the pleadings under Rule 12(c)" (footnote omitted)).

## II.    FACTS[2]

### A.    Plaintiff's Lottery Payment

On February 15, 2021, Plaintiff, "an owner of a local butcher shop," "visited Saratoga Casino Hotel [] where she redeemed four [] lottery 'scratch-off' tickets." (Dkt. No. 33-2, ¶¶ 19, 60). "She presented her winning tickets to the cashier employed by the Casino who handed her an additional $850.00." (*Id.* ¶ 19). Plaintiff "questioned the amount, commenting 'I think you gave me too much money,' and requesting that the cashier verify the amount was correct." (*Id.*). The cashier "confirmed [Plaintiff] was entitled to the additional $850.00, saying, 'No, that's right,'" and Plaintiff "accepted her winnings and left the Casino." (*Id.*).

On or about the same day, Cotter, "a Casino employee," "telephoned [Plaintiff] and informed her that she had been overpaid by the Casino in the sum of $850.00 and sought repayment of the money to the Casino at an agreed-upon time." (*Id.* ¶ 20). Subsequently, Cotter "contacted [Plaintiff] again, and told [her] that she had committed larceny if she refused to return money provided to [her] because of the Casino's mistake"; Cotter "pressured [Plaintiff] to return to the [C]asino and to return the funds," and she "threatened" Plaintiff "by telling her that the police would be involved if [she] would not resolve the dispute with [] Cotter." (*Id.* ¶¶ 21–23).

On March 1, 2021, Plaintiff "returned to the Casino to meet with the Director of Security[,] Edward Moore, who was formerly Chief of Police with the [Saratoga Springs Police

---

[2] The facts are drawn from the PAC. The Court assumes the truth of, and draws reasonable inferences from, the well-pleaded factual allegations. *Faber v. Metro. Life Ins. Co.*, 648 F.3d 98, 104 (2d Cir. 2011). The Court does not consider the 50-h hearing transcript or the emails attached to Moore and Cotter's reply because they are not attached to the PAC, integral to the PAC, or incorporated into the PAC by reference. (Dkt Nos. 43-1, 43-2); *see Doe v. City of New York*, No. 18-cv-0670, 2018 WL 3824133, at *5, 2018 U.S. Dist. LEXIS 134914, at *12 (E.D.N.Y. Aug. 9, 2018) ("[T]he greater weight of authority in this circuit excludes 50-h hearing testimony from consideration on a motion to dismiss unless there is evidence that the plaintiff relied on the 50-h hearing testimony in drafting her complaint." (collecting cases)); *Jones v. Halstead Mgmt. Co., LLC*, 81 F. Supp. 3d 324, 332 (S.D.N.Y. 2015) (finding that it was "improper to consider [an email] when considering a motion to dismiss" where it was "not attached to the complaint, was not incorporated by reference in the complaint, and therefore was not integral to the complaint" (internal quotation marks and citation omitted)).

Department ("SSPD")]," but left after "waiting some time for [] Moore to appear."[3] (*Id.* ¶ 24).

On March 5, 2021, Moore "decided to turn the matter over to law enforcement for petit larceny

despite the fact that he knew there was no basis for criminal prosecution." (*Id.* ¶ 25). Moore

"provided information and documentation to the SSPD that he believed would result in arrest and

prosecution for Petit Larceny" and instructed Cotter "to assist the SSPD[] and to provide

information, copies of the tickets cashed out, and video evidence." (*Id.* ¶¶ 26, 27). Moore also

"documented that [Plaintiff] committed Petit Larceny, a Class A misdemeanor" in a security

incident report. (*Id.* ¶¶ 29, 30).

"Subsequently, [Plaintiff] received additional and repeated calls from employees of the

Casino and/or [] Moore seeking the return of the money" and "warn[ing] her that if she did not

return the money, the matter would be turned over to the SSPD for arrest and prosecution." (*Id.*

¶ 31). Plaintiff's attorney "sought to verify the amount of the overage and requested information

related to the incident," but the requests "were denied by the SSPD on the grounds it was an

ongoing investigation." (*Id.* ¶ 32).

### B.   Issuance of Warrants for Plaintiff's Arrest

On March 9, 2021, in a tape-recorded phone call, SSPD Officer Camarro "told [Assistant

District Attorney ("ADA")] Fradino that [Plaintiff] had won money at the Casino and the

Casino's cashier" overpaid her. (*Id.* ¶ 33). "Officer Camarro acknowledged that [Plaintiff] had

asked the cashier to verify the amount and the cashier indicated it was correct." (*Id.* ¶ 34). In

response, ADA Fradino said that Plaintiff "did nothing wrong." (*Id.* ¶ 35). ADA Fradino

explained that Plaintiff could not be charged with larceny, "noting that [Plaintiff] had tried to

---

[3] Plaintiff's PAC alleges that this occurred on "March 1, 2022." (Dkt. No. 33-2, ¶ 24). However, according to the PAC, the surrounding events occurred in March 2021. Thus, the Court reasonably infers that Plaintiff visited the Casino on March 1, 2021.

rectify the situation when she asked the cashier to verify the amount." (*Id.*). ADA Fradino stated that Plaintiff "ha[d] not committed a crime." (*Id.*). Officer Camarro "agreed by stating, 'I did not feel right charging her.'" (*Id.*). "After the call, Officer Camarro wrote in an Incident Report that he informed Ms. Cotter . . . that the Saratoga Springs District Attorney's Office ["SSDAO"] did not view the matter as criminal." (*Id.* ¶ 36). On or around March 13, 2021, "the SSPD marked the investigation into [Plaintiff] as 'closed.'" (*Id.* ¶ 37).

On March 13, 2021, Officer Camarro called Plaintiff and told her that "the Casino wanted to press charges if she did not return the money, effectively using the powers of the SSPD as a collection agency." (*Id.* ¶ 38). Plaintiff alleges that Moore and Cotter "advised, insisted, or otherwise importuned that SSPD investigate and arrest [Plaintiff]." (*Id.*). On April 5, 2021, Plaintiff's "attorney contacted the SSPD and spoke to the Desk Sergeant, who stated the matter was closed." (*Id.* ¶ 39).

On April 8, 2021, Officer Camarro "draft[ed] a sworn complaint" stating that Plaintiff "knowingly receive[d] an additional $850.00 from the Saratoga Hotel and Casino" and that when she "was made aware of the overpayment she [] with[held] the money from the casino." (*Id.* ¶ 40). Plaintiff alleges that these statements were "knowingly false" and that "[t]he report to the SSPD that [Plaintiff] withheld money was false." (*Id.* ¶¶ 40–41). On April 13, 2021, "[a] first warrant for [Plaintiff's] arrest was prepared" "accusing [her] of Petit Larceny under New York State Penal Law Section 155.25." (*Id.* ¶ 42). On June 24, 2021, "due to an incorrect date of birth on the first arrest warrant," "[a] second warrant for [her] arrest was signed." (*Id.*). "Both warrants were issued with knowledge that probable cause that a crime was committed was wholly lacking" and "with false information provided by Defendants Moore, Cotter, and the Casino." (*Id.* ¶¶ 43–44). Officer Camarro "deliberately failed to inform [the Judge] that the [SSDAO] had

told Officer Camarro that he could not charge [Plaintiff] under the circumstances and that no crime had been committed." (*Id.* ¶ 47). Defendants "[knew] probable cause was lacking." (*Id.* ¶¶ 48, 62). Plaintiff alleges that her subsequent "arrest was the result of an agreement amongst Defendants to arrest [Plaintiff] despite there not being any evidence of a crime." (*Id.* ¶ 46).

### C.      Plaintiff's Arrest

On October 20, 2021, Plaintiff informed her attorney "that the SSPD had issued a warrant for her arrest." (*Id.* ¶ 49). The next day, Plaintiff "turned herself in," "was patted down and handcuffed behind her back," and "remained in handcuffs from 9:00 [a.m.] to almost noon in a holding cell with other arrestees and parole violators until she appeared in City Court, where she pleaded not guilty." (*Id.*).

On November 4, 2021, Plaintiff's arrest "was reported in three different newspapers." (*Id.* ¶ 50). On November 18, 2021, Plaintiff appeared in Court "but the proceeding was adjourned because discovery materials had not been turned over by the prosecution." (*Id.* ¶ 51). "Through discovery, [P]laintiff's counsel learned of the tape-recorded call between Officer Camarro and the ADA and notified the prosecution and [C]ourt." (*Id.* ¶ 52).

### D.      Dismissal of Plaintiff's Charge

On January 11, 2022, the SSDAO "dismissed the charges in the interest of justice." (*Id.* ¶ 53). The prosecutor told the Judge that Plaintiff "literally tried not to take the money and they gave it to her anyway, so the People believe that she did not have sufficient intent for a charge of petit larceny." (*Id.* ¶ 54). Judge Vero stated that the charges were dismissed "because of a lack of evidence of [Plaintiff's] guilt, and a lack of harm caused." (*Id.*). However, "there was no publicity alerting the public that the charge against [Plaintiff] was dismissed." (*Id.* ¶ 58).

### III.     STANDARD OF REVIEW

#### A.     Motion to Dismiss—Fed. R. Civ. P. 12(b)(6)

To survive a motion to dismiss under Rule 12(b)(6) for failure to state a claim, "a complaint must provide 'enough facts to state a claim to relief that is plausible on its face.'" *Mayor & City Council of Balt. v. Citigroup, Inc.*, 709 F.3d 129, 135 (2d Cir. 2013) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Mere "labels and conclusions" are insufficient; rather, a plaintiff must provide factual allegations sufficient "to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. The Court must accept as true all factual allegations in the complaint and draw all reasonable inferences in the plaintiff's favor. *See EEOC v. Port Auth.*, 768 F.3d 247, 253 (2d Cir. 2014) (citing *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007)). However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

#### B.     Motion for Judgment on the Pleadings—Fed. R. Civ. P. 12(c)

Under Rule 12(c) of the Federal Rules of Civil Procedure, any party may request judgment on the pleadings "after the pleadings are closed—but early enough not to delay trial." "The standard for granting a Rule 12(c) motion for judgment on the pleadings is identical to that for granting a Rule 12(b)(6) motion for failure to state a claim." *Lively*, 6 F.4th at 301 (quoting *Lynch v. City of New York*, 952 F.3d 67, 75 (2d Cir. 2020)). Thus, "[t]o survive a Rule 12(c) motion, [the plaintiff's] complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausibly on its face." *Id.* (quoting *Hayden v. Paterson*, 594 F.3d 150, 160 (2d Cir. 2010)). "The assessment of whether a complaint's factual allegations plausibly give rise to an entitlement to relief . . . calls for enough fact[s] to raise a reasonable expectation that discovery will reveal evidence of illegal conduct." *Id.* (alteration in original) (quoting *Lynch*,

952 F.3d at 75)). "In making this assessment, [the Court] 'draw[s] all reasonable inferences in [the plaintiff's] favor.'" *Id.* (third alteration in original) (quoting *Johnson v. Rowley*, 569 F.3d 40, 43 (2d Cir. 2009)).[4]

### C.      Motion to Amend—Fed. R. Civ. P. 15

In general, leave to amend should be freely given "when justice so requires." Fed. R. Civ. P. 15(a)(2). "Where plaintiffs seek to amend their complaint while a motion to dismiss is pending, a court 'has a variety of ways in which it may deal with the pending motion to dismiss, from denying the motion as moot to considering the merits of the motion in light of the amended complaint.'" *Haag v. MVP Health Care*, 866 F. Supp. 2d 137, 140 (N.D.N.Y. 2012) (quoting *Roller Bearing Co. of Am., Inc. v. Am. Software, Inc.*, 570 F. Supp. 2d 376, 384 (D. Conn. 2008)). Since Moving Defendants have had a full opportunity to respond to the proposed amendments and the claims remain the same, the Court considers the merits of the motion to dismiss and motion for judgment on the pleadings in light of the PAC. If the claims in the PAC cannot survive the motions, then Plaintiff's cross-motion to amend will be denied as futile. *See Dougherty v. Town of N. Hempstead Bd. of Zoning Appeals*, 282 F.3d 83, 88 (2d Cir. 2002) ("An amendment to a pleading will be futile if a proposed claim could not withstand a motion to dismiss pursuant to Rule 12(b)(6)."), *abrogation on other grounds recognized by Sagaponack Realty, LLC v. Vill. of Sagaponack*, 778 F. App'x 63 (2d Cir. 2019) (summary order).

---

[4] Plaintiff incorrectly argues that the standard of review for a Rule 12(c) motion is a "heightened burden" compared to the Rule 12(b)(6) standard of review. (Dkt. No. 38, at 8). Plaintiff cites no Second Circuit caselaw, instead relying on *Murphy v. Dep't of the Air Force*, 326 F.R.D. 47, 48 (D.D.C. 2018). (*Id.*). However, as Casino Defendants point out, "the Second Circuit has long held that a [Rule 12(c)] motion . . . is decided under the same standard as a [Rule 12(b)(6)] motion." (Dkt. No. 42, at 10); *see Lively*, 6 F.4th at 301. Because both motions are subject to the same standard, the Court addresses them together.

## IV.   DISCUSSION

As relevant here, Plaintiff's PAC asserts claims for (1) malicious prosecution under New York law against all Moving Defendants; (2) false arrest[5] under New York law against all Moving Defendants; (3) defamation against Casino Defendants; and (4) conspiracy under 42 U.S.C. § 1983 against Officer Camarro, the City, and Moving Defendants. (*See* Dkt. No. 33-2).[6] Moving Defendants move to dismiss all of the claims against them. (Dkt. Nos. 21-2, 28-2, 42, 43).[7]

### A.   Malicious Prosecution Claim

The elements for a malicious prosecution claim in New York are: "(1) the initiation or continuation of a criminal proceeding against plaintiff; (2) termination of the proceeding in plaintiff's favor; (3) lack of probable cause for commencing the proceeding; and (4) actual malice as a motivation for defendant's actions." *Jocks v. Tavernier*, 316 F.3d 128, 136 (2d Cir. 2003) (quoting *Murphy v. Lynn*, 118 F.3d 938, 947 (2d Cir. 1997)). Moving Defendants argue that Plaintiff fails to plausibly allege initiation or favorable termination. (Dkt. No. 21-2, at 8–10; Dkt. No. 28-2, at 12–13; Dkt. No. 42, at 11–13; Dkt. No. 43, at 9–12). Casino Defendants also argue that she fails to plausibly allege actual malice. (Dkt. No. 28-2, at 13–14; Dkt. No. 42, at 15).

### 1.   Initiation

Moving Defendants argue that Plaintiff fails to plausibly allege that they initiated her prosecution. (Dkt. No. 21-2, at 8; Dkt. No. 28-2, at 12–13; Dkt. No. 42, at 11–13; Dkt. No. 43, at

---

[5] Plaintiff styles her claim as one for "False Arrest and Imprisonment." (Dkt. No. 33-2, at 14). "In New York, the tort of false arrest is synonymous with that of false imprisonment." *Posr v. Doherty*, 944 F.2d 91, 96 (2d Cir. 1991) (citing *Jacques v. Sears, Roebuck & Co.*, 30 N.Y.2d 466, 473 (1972)).

[6] The Court does not address the claims asserted against the City and Officer Camarro, who have not moved to dismiss.

[7] Casino Defendants note that they are vicariously liable through actions of their employees. (Dkt. No. 28-2, at 10).

9–11). Plaintiff responds that she plausibly alleges initiation because the Casino "insisted upon prosecution" and Moving Defendants "knowingly made a false allegation to cause [Plaintiff's] arrest." (Dkt. No. 33-4, at 8; Dkt. No. 38, at 10–11).

"'Initiation' in this context is a term of art." *Rohman v. N.Y.C. Transit Auth.*, 215 F.3d 208, 217 (2d Cir. 2000). "To initiate a prosecution, a defendant must do more than report the crime or give testimony." *Manganiello v. City of New York*, 612 F.3d 149, 163 (2d Cir. 2010). Rather, "the defendant must have played an active role in the prosecution, such as giving advice and encouragement or importuning the authorities to act." *Rohman*, 215 F.3d at 217. And "[m]erely giving false information to the authorities does not constitute initiation of the proceeding without an additional allegation or showing that, at the time the information was provided, the defendant knew it to be false, yet still gave it to the police." *Lupski v. Cnty. of Nassau*, 32 A.D.3d 997, 998 (App. Div. 2006) (citations omitted).

Here, Plaintiff fails to plausibly allege that Moving Defendants knowingly provided false information to the police. Plaintiff alleges that warrants for her arrest were issued on April 13, 2021 and June 24, 2021 "with false information provided by Defendants Moore, Cotter, and the Casino." (*Id.* ¶ 44). The allegedly false information provided by them "included, but [was] not limited to, claims that [Plaintiff] committed a crime and refused to return money to which she knew she was not entitled." (*Id.* ¶ 80; *see id.* ¶ 41 ("The report to SSPD that [Plaintiff] withheld money was false.")). Plaintiff alleges that they "intentionally made false allegations against [Plaintiff] to purposely cause [her] false arrest." (*Id.* ¶ 79). Plaintiff has not, however, alleged facts from which the Court could plausibly infer that Moving Defendants knew this information was false. Indeed, the allegedly false information—that Plaintiff committed a crime by refusing to return money to which she knew she was not entitled—is consistent with Plaintiff's

allegations of what actually happened—that she received "an additional $850 from the Casino's

cashier, that "Cotter[] telephoned [Plaintiff] and informed her that she had been overpaid by the

Casino in the sum of $850.00 and sought repayment of the money to the Casino," and that Cotter

"contacted [Plaintiff] again, and told [her] that she had committed larceny if she refused to return

[the] money." (Dkt. No. 33-2, ¶¶ 19–21). Plaintiff does not allege that she returned the

overpayment or that she was entitled to keep it. *Cf. Emanuel v. Griffin*, No. 13-cv-1806, 2013

WL 5477505, at *7, 2013 U.S. Dist. LEXIS 142723, at *23–25 (S.D.N.Y. Oct. 2, 2013) (denying

defendants' motion to dismiss plaintiff's malicious prosecution claim where plaintiff went

beyond alleging that defendants "knew or should have know[n]" that information was false and

provided additional factual allegations to "bolster this claim").

Nonetheless, Plaintiff plausibly alleges that Moving Defendants went beyond merely

reporting a crime and played an active role in her prosecution. Plaintiff alleges that Moore

"turn[ed] the matter over to law enforcement for prosecution for petit larceny," "instructed Ms.

Cotter to assist the SSPD, and to provide information, copies of the tickets cashed out, and video

evidence," and "provided information and documentation to the SSPD that he believed would

result in arrest and prosecution for Petit Larceny." (Dkt. No. 33-2, ¶¶ 24, 26, 27). Subsequently,

Plaintiff alleges that ADA Fradino told Officer Camarro that Plaintiff could not be charged and

Officer Camarro "agreed" and responded that he "did not feel right charging her." (*Id.* ¶ 35).

Officer Camarro "informed Ms. Cotter . . . that the [SSDAO] did not view the matter as

criminal" and, "on or around March 13, 2021, the SSPD marked the investigation into [Plaintiff]

as 'closed.'" (*Id.* ¶¶ 36, 37). Nonetheless, Plaintiff alleges that, that same day, "Officer Camarro

called [Plaintiff] telling her the Casino wanted to press charges if she did not return the money,"

and that "Mr. Moore and Ms. Cotter advised, insisted, or otherwise importuned that SSPD

investigate and arrest [Plaintiff]." (*Id.* ¶ 38). Plaintiff alleges that Officer Camarro drafted a sworn criminal complaint against her on April 8, 2021. (*Id.* ¶ 40).

Thus, drawing all reasonable inferences in Plaintiff's favor, she plausibly alleges that Moving Defendants played an active role in her prosecution by insisting that Officer Camarro press charges, even though the SSPD had closed its investigation and Cotter was aware of the SSDAO's view that the matter was not criminal. *See Sorrell v. Inc. Village of Lynbrook*, No. 10-cv-49, 2012 WL 1999642, at *7, 2012 U.S. Dist. LEXIS 77303, at *20 (E.D.N.Y. June 4, 2012) (finding that plaintiffs' proposed amended malicious prosecution claim would not be futile where they alleged that the defendants "instigated and encouraged the baseless prosecution or the Plaintiffs" and a defendant "insisted that plaintiffs be charged, even though he was aware of [] problems with the witness identifications").

### 2.    Termination

Moving Defendants argue that Plaintiff fails to plausibly allege the favorable termination element of her malicious prosecution claim because the dismissal of her underlying criminal charge was inconsistent with innocence. (Dkt. No. 21-2, at 9–10; Dkt. No. 43, at 11–12). Plaintiff responds that the dismissal of the charge against her "in the interest of justice" was not inconsistent with innocence. (Dkt. No. 33-4, at 8–9).

Under New York law, "any termination of a criminal prosecution, such that the criminal charges may not be brought again, qualifies as a favorable termination, so long as the circumstances surrounding the termination are not inconsistent with the innocence of the accused." *Cantalino v. Danner*, 96 N.Y.2d 391, 395 (2001). However, a termination does not qualify as "favorable" "if charges are dismissed out of mercy, since mercy presupposes the guilt of the accused." *Id.* For dismissals in the interest of justice, "the question is whether, under the circumstances of the case, the disposition was inconsistent with the innocence of the accused."

*Id.* at 396. "A case-specific rule is particularly appropriate for dismissals in the interest of justice, since the trial court is required to state on the record its reasons for dismissing the criminal charges." *Id.*; *see also Jeanty v. City of Utica*, No. 16-cv-966, 2017 WL 6408878, at *6, 2017 U.S. Dist. LEXIS 218307, at *15–16 (N.D.N.Y. Aug. 18, 2017) (collecting cases applying New York "favorable termination" standard to dismissals in the interest of justice).

Here, the PAC alleges that the charge was dismissed after the prosecutor told the City Court Judge that there was not "sufficient intent for a charge of petit larceny." (Dkt. No. 33-2, ¶ 54). The City Court Judge then dismissed the charges "because of a lack of evidence of guilt" and "a lack of harm caused." (*Id.* ¶ 55). Clearly, the dismissal was not inconsistent with Plaintiff's innocence. *See Bellissimo v. Mitchell*, 995 N.Y.S.2d 603, 606 (App. Div. 2014) (finding that the plaintiff's dismissal in the interest of justice was "based upon 'the weakness of proof of guilt,'" which was "not inconsistent with the plaintiff's innocence" (citations omitted)).[8]

Thus, Plaintiff has plausibly alleged that the criminal proceedings were terminated in her favor.

### 3.   Actual Malice

Casino Defendants argue that Plaintiff fails to plausibly allege that they acted with actual malice because it was "reasonable for [them] to believe that probable cause existed" for petit larceny. (Dkt. No. 28-2, at 13–14; Dkt. No. 42, at 15). Plaintiff responds that, because there was no probable cause, the Court can infer that Casino Defendants acted with actual malice. (Dkt. No. 38, at 11–12).

---

[8] Moving Defendants' reliance on *Ward v. Silverberg*, 85 N.Y.2d 993 (1995), is misplaced. (Dkt. No. 21-2, at 9). As the New York Court of Appeals has explained, the Criminal Court in *Ward* "recognized that [the] plaintiff had committed the charged conduct, [but] it did not believe a criminal sanction was appropriate," and "the criminal charges in *Ward* were dismissed out of mercy." *Cantalino*, 96 N.Y.2d at 396.

Under New York law, "[t]o prove actual malice, the plaintiff must show that the defendant 'commenced the prior criminal proceeding due to a wrong or improper motive, something other than a desire to see the ends of justice served.'" *McGee v. Dunn*, 940 F. Supp. 2d 93, 102 (S.D.N.Y. 2013) (quoting *Nardelli v. Stamberg*, 44 N.Y.2d 500, 503 (1978)). Further, "probable cause to initiate a criminal proceeding may be so totally lacking as to reasonably permit an inference that the proceeding was maliciously instituted." *De Lourdes Torres v. Jones*, 26 N.Y.3d 742, 761–62 (2016) (quoting *Martin v. City of Albany*, 42 N.Y.2d 13, 17 (1977)). "Probable cause, in the context of malicious prosecution," means "such facts and circumstances as would lead a reasonably prudent person to believe the plaintiff guilty." *Boyd v. City of N.Y.*, 336 F.3d 72, 76 (2d Cir. 2003).

In New York, "[l]arceny includes a wrongful taking, obtaining or *withholding of another's property*" "with intent to deprive another of property" by "acquiring lost property." N.Y. Penal Law § 155.05(2) (emphasis added). "A person acquires lost property when he exercises control over property of another which he knows to have been lost or mislaid, or to have been delivered under a mistake as to the identity of the recipient or the nature or amount of the property, without taking reasonable measures to return such property to the owner." *Id.* § 155.05(2)(b).

Here, Plaintiff plausibly alleges that probable cause was lacking such that the Court may infer actual malice. Plaintiff alleges that, upon receiving the overpayment, she said "I think you gave me too much money," but the Casino's cashier "verif[ied] the amount was correct" and "confirmed Ms. Sanders was entitled to the additional $850." (Dkt. No. 33-2, ¶ 19). After Plaintiff received phone calls from Cotter "inform[ing] her that she had been overpaid" and "pressur[ing] [her] to return to the casino and to return the funds," she "returned to the Casino to

14

meet with . . . Moore" but left "[a]fter waiting some time for Mr. Moore to appear." (*Id.* ¶¶ 20, 22, 24). Plaintiff also "retained an attorney, who sought to verify the amount of the overage and requested information related to the incident," but "the requests were denied by the SSPD on the grounds it was an ongoing investigation." (*Id.* ¶ 32). On March 9, 2021, Officer Camarro called ADA Fradino, who informed him that Plaintiff could not be charged with larceny, "noting that [she] had tried to rectify the situation when she asked the cashier to verify the amount." (*Id.* ¶ 35). After that call, Officer Camarro informed Cotter that the SSDAO "did not view the matter as criminal." (*Id.* ¶ 36). However, on April 13, 2021 and June 24, 2021, warrants were issued for Plaintiff's arrest. (*Id.* ¶ 47).

In light of Plaintiff's allegations that she confirmed that she was entitled to the money, went to meet with Moore after Cotter asked Plaintiff to return the funds, and retained an attorney to verify the overpayment, she has plausibly alleged that Moving Defendants lacked probable cause. *See Lalumia v. Sutton*, No. 13-cv-1012, 2014 WL 316709, at *2, 2014 U.S. Dist. LEXIS 10017, at *5–6 (N.D.N.Y. Jan. 28, 2014) (denying defendant's motion to dismiss plaintiff's false arrest and malicious prosecution claims upon reconsideration where defendant argued the plaintiff's "acquisition of lost property" constituted larceny because "an intent to deprive another is still required" and "[t]he measures which plaintiff took to return the property to [defendant] . . . could certainly be said to be reasonable"). Plaintiff has pleaded facts from which actual malice may be inferred and thus has plausibly alleged this element of her malicious prosecution claim. *See Varricchio v. Cnty. of Nassau*, 702 F. Supp. 2d 40, 53 (E.D.N.Y. 2010) (denying a motion to dismiss plaintiff's § 1983 malicious prosecution claim because "the existence of probable cause remain[ed] in question, [and thus] the existence of actual malice [did] as well").

Accordingly, the Court denies Moore and Cotter's motion to dismiss for failure to state a claim and Casino Defendants' motion for judgment on the pleadings as to Plaintiff's malicious prosecution claim.

### B.      False Arrest Claim

Moving Defendants argue that the Court should dismiss Plaintiff's false arrest claim because she fails to plausibly allege that they intended to confine her. (Dkt. No. 21-2, at 10–11; Dkt. No. 28-2, at 14–15; Dkt. No. 42, at 16–17; Dkt. No. 43, at 12–13). Plaintiff responds that she plausibly alleges Moving Defendants' intent because she alleges that they provided "false information to the police without reasonable cause" and "the Casino's insistence that the authorities act." (Dkt. No. 33-4, at 11; Dkt. No. 38, at 12–13).

"Under New York law, a plaintiff claiming false arrest must show that '(1) the defendant intended to confine [the plaintiff], (2) the plaintiff was conscious of the confinement, (3) the plaintiff did not consent to the confinement, and (4) the confinement was not otherwise privileged.'" *Kayo v. Mertz*, 531 F. Supp. 3d 774, 788 (S.D.N.Y. 2021) (alteration in original) (quoting *Singer v. Fulton Cnty. Sheriff*, 63 F.3d 110, 118 (2d Cir. 1995)). "[A] defendant who furnishes information to police will not generally be held liable for false arrest when the police exercise independent judgment to arrest a plaintiff." *TADCO Constr. Corp. v. Dormitory Auth. of State of N.Y.*, 700 F. Supp. 2d 253, 268 (E.D.N.Y. 2010) (citations omitted). However, a defendant may be liable "where a plaintiff can show that defendant instigated his arrest, thereby making the police agents in accomplishing defendant's intent to confine the plaintiff." *Id.* (citation omitted). A defendant "instigates" an arrest when he "provi[des] [] false information leading to an arrest, where the defendants 'lacked reasonable cause for their belief in the plaintiff's culpability'" or "giv[es] advice and encouragement or importun[es] the authorities to act." *Id.* (first quoting *Weintraub v. Bd. of Educ. of City of N.Y.*, 423 F. Supp. 2d 38, 56

(E.D.N.Y. 2006); and then quoting *Lowmack v. Eckerd Corp.*, 757 N.Y.S.2d 406, 408 (App. Div. 2003)).

Here, for many of the reasons discussed above with respect to Plaintiff's malicious prosecution claim, Plaintiff fails to plausibly allege that Moving Defendants knowingly provided false information to the police. However, Plaintiff plausibly alleges that Moving Defendants importuned the authorities to act. Plaintiff alleges that, on or around March 13, 2021, Officer Camarro "informed Ms. Cotter . . . that the [SSDAO] did not view the matter as criminal" and the SSPD "marked the investigation into [Plaintiff] as 'closed.'" (*Id.* ¶¶ 36, 37). Plaintiff alleges that Officer Camarro nonetheless "called [Plaintiff] telling her the Casino wanted to press charges if she did not return the money," and that "Mr. Moore and Ms. Cotter advised, insisted, or otherwise importuned that SSPD investigate and arrest [Plaintiff]." (*Id.* ¶ 38). Plaintiff alleges that SSPD informed her attorney on April 5, 2021 that "the matter was closed." (*Id.* ¶ 39). Plaintiff alleges that Officer Camarro drafted a sworn complaint against Plaintiff on April 8, 2021. (*Id.* ¶ 40). Drawing all reasonable inferences in Plaintiff's favor, she plausibly alleges that Moving Defendants instigated her arrest. *See TADCO Constr. Corp.*, 700 F. Supp. 2d at 269 (finding that the plaintiff's allegations "put forth a plausible claim of false arrest" where it alleged that "rather than going through the appropriate channels to settle their contractual dispute or remove DeMartino from the job site, [defendant] instead called the police and 'demand[ed]' DeMartino's arrest" (alteration in original)).

Accordingly, the Court denies Moore and Cotter's motion to dismiss for failure to state a claim and Casino Defendants' motion for judgment on the pleadings as to Plaintiff's false arrest claim.

### C.    Conspiracy Claim—42 U.S.C. § 1983

Moving Defendants argue that the Court should dismiss Plaintiff's Section 1983 conspiracy claim because Plaintiff fails to provide sufficient details to plausibly allege an agreement involving Moore or Cotter and Camarro or an overt act. (Dkt. No. 21-2, at 11–12; Dkt. No. 28-2, at 15–16; Dkt. No. 42, at 17–19; Dkt. No. 43, at 13–15).[9] Plaintiff responds that, at this stage, she has plausibly alleged an agreement and an overt act. (Dkt. No. 33-4, at 11–12; Dkt. No. 38, at 13–14).

"To prove a § 1983 conspiracy, a plaintiff must show: (1) an agreement between two or more state actors or between a state actor and a private entity; (2) to act in concert to inflict an unconstitutional injury; and (3) an overt act done in furtherance of that goal causing damages." *Pangburn v. Culbertson*, 200 F.3d 65, 72 (2d Cir. 1999). "[C]omplaints containing only conclusory, vague, or general allegations that the defendants have engaged in a conspiracy to deprive the plaintiff of h[er] constitutional rights are properly dismissed; diffuse and expansive allegations are insufficient, unless amplified by specific instances of misconduct." *Marquez v. Hoffman*, No. 18-cv-7315, 2021 WL 1226981, at *23, 2021 U.S. Dist. LEXIS 62994, at *73 (S.D.N.Y. Mar. 31, 2021) (quoting *Ciambrello v. Cnty. of Nassau*, 292 F.3d 307, 325 (2d Cir. 2002)).

Here, construing all inferences in Plaintiffs favor, the PAC plausibly alleges a conspiracy between Officer Camarro, Cotter, and Moore to deprive her of her constitutional rights. Plaintiff alleges that Moore, the former police chief, "decided to turn the matter over to law enforcement for prosecution for petit larceny despite the fact that he knew there was no basis for criminal

---

[9] Casino Defendants have not made any other argument in support of their motion, and the Court therefore has not considered any other basis for dismissal.

prosecution." (Dkt. No. 33-2, ¶¶ 24, 25). Plaintiff also alleges that "Officer Camarro was advised in no uncertain terms by ADA Fradino on March 9, 2021[] that [Plaintiff] had not committed a crime and could not be charged with a crime." (*Id.* ¶ 106). After that call, Officer Camarro wrote in an incident report that he told Cotter that the District Attorney's Office "did not view the matter as criminal." (*Id.* ¶ 36). And, thereafter Moore and Cotter "advised, insisted, or otherwise importuned that SSPD investigated and arrest [Plaintiff]" (*Id.* ¶ 38). Then, after a Desk Sergeant at the police department told Plaintiff's attorney that "the matter was closed," Officer Camarro "filed a misdemeanor criminal complaint . . . charging [Plaintiff] with petit larceny at the request of Cotter, Moore, and [] Casino [Defendants]. (*Id.* ¶¶ 39, 40, 106). At this early stage of the case, construing all inferences in Plaintiff's favor, she plausibly alleges that Moore, Cotter, and Officer Camarro agreed to act in concert to charge and prosecute Plaintiff without a basis for criminal prosecution, and plausibly alleges overt acts—including Officer Camarro's filing of a misdemeanor complaint—in furtherance of that goal. *See Martin v. Cnty. Of Suffolk*, No. 13-cv-2104, 2014 WL 1232906, at *7, 2014 U.S. Dist. LEXIS 41663, at *24–25 (E.D.N.Y. Mar. 26, 2014) (finding plaintiff's allegations "sufficient to state a plausible conspiracy claim under Section 1983" where he alleged that "he was lawfully standing on the sidewalk with his camera . . . when [a defendant] arrived and spoke to the police" and "after [that defendant] spoke to the police, they cleared the area by arresting him, without any legal justification whatsoever").

Accordingly, the Court denies Moore and Cotter's motion to dismiss for failure to state a claim and Casino Defendants' motion for judgment on the pleadings as to Plaintiff's § 1983 conspiracy claim against them.

### D.    Defamation Claim

Casino Defendants argue that Plaintiff's defamation claim must be dismissed because she fails to allege the actual allegedly defamatory statements, who made the statements, when and

where the statements were made, the third parties to whom the statements were published, and that the statements were false. (Dkt. No. 28-2, at 16–19; Dkt. No. 42, at 19–21).[10] Plaintiff responds that she provides sufficient information for a defamation claim and that she plausibly alleges that Casino Defendants made false statements to the police. (Dkt. No. 38, at 14–15).

To state a claim for defamation under New York law, a plaintiff must allege "(1) a false statement that is (2) published to a third party (3) without privilege or authorization, and that (4) causes harm, unless the statement is one of the types of publications actionable regardless of harm." *Elias v. Rolling Stone LLC*, 872 F.3d 97, 104 (2d Cir. 2017). "To survive a motion to dismiss, a plaintiff 'must plead facts that, if proven, would establish that the defendant's statements were not substantially true.'" *Tannerite Sports LLC v. NBC Universal News Grp.*, 864 F.3d 236, 247 (2d Cir. 2017). "[A] statement is substantially true if the statement would not have a different effect on the mind of the reader from that which the pleaded truth would have produced." *Id.* at 242 (quoting *Franklin v. Daily Holdings, Inc.*, 21 N.Y.S.3d 6, 12 (App. Div. 2015)). "[A] statement need not be completely true but can be substantially true." *Id.* at 243 (quoting *Tolbert v. Smith*, 790 F.3d 427, 440 (2d Cir. 2015)) (emphases omitted).

Here, Plaintiff alleges that Casino Defendants "made a demonstrably false statement to the Court about Plaintiff in that she knowingly stole money from the Casino and published it to third parties without authorization or privilege." (Dkt. No. 33-2, ¶ 103). There are, however, no factual allegations about any statements or publication made by Casino Defendants or their employees to the Court. It was Officer Camarro who initiated the criminal prosecution by

---

[10] Casino Defendants argue that Plaintiff's defamation claim must be dismissed because she "fails to set forth the particular words and/or statement allegedly made by the Casino." (Dkt. No. 28-2, at 17). "Although New York law sets a heightened pleading standard for defamation claims, New York pleading requirements do not apply to a case in federal court." *Thorsen v. Sons of Norway*, 996 F. Supp. 2d 143, 163 (E.D.N.Y. 2014) (citing *Pasqualini v. MortgageIT, Inc.*, 498 F. Supp. 2d 659, 671–72 (S.D.N.Y. 2007)).

"drafting a sworn complaint." (*Id.* ¶ 40). Thus, to the extent Plaintiff's defamation claim is based

on statements to the court, she has failed to plausibly allege the claim. *See Bendit v. Canva, Inc.*

*& Canva Pty. Ltd.*, No. 23-cv-473, 2023 WL 5391413, at *7–8, 2023 U.S. Dist. LEXIS 148973,

at *22 (S.D.N.Y. Aug. 22, 2023) (granting defendants' motion to dismiss plaintiff's defamation

claim because "[t]he complaint's failure to identify the allegedly defamatory statements

preclude[d] [her] cause of action for defamation"); *Elcan Indus., Inc. v. Cuccolini, S.R.L.*, No.

13-cv-4058, 2014 WL 1173343, at *9, 2014 U.S. Dist. LEXIS 37702, at *27 (S.D.N.Y. Mar. 21,

2014) (granting defendants' motion to dismiss plaintiff's defamation claim where "the complaint

fail[ed] to identify," inter alia, "what [the defamatory statements] were, when they were made, or

where").

      To the extent Plaintiff is relying on "false statements made to obtain warrants for

Plaintiff's arrest," as her defamation count is captioned, (Dkt. No. 33-2, at 18), Plaintiff's

conclusory allegations about statements made by "the Defendants" that led to the issuance of

arrest warrants are insufficient. Arrest warrants were issued following Officer Camarro's sworn

complaint. (*Id.* ¶¶ 40, 42). Plaintiff alleges that "[t]he Defendants made false allegations" against

Plaintiff, including that Plaintiff "committed a crime and refused to return money to which she

knew she was not entitled," (*id.* ¶¶ 79–80), but Plaintiff failed to allege the identity of the

speaker or the third party to whom any such statement was made. Plaintiff's allegation that arrest

warrants were issued "with false information provided by Defendants Moore, Cotter, and the

Casino" is similarly lacking. (*Id.* ¶ 44); *see Kinowski v. Home for Elderly Women of Montgomery*

*Cnty., Inc.*, No. 22-cv-1342, 2023 WL 4865531, at *12–13, 2023 U.S. Dist. LEXIS 131663, at

*38–39 (N.D.N.Y. July 31, 2023) (dismissing plaintiff's defamation claim because she failed to

"plausibly allege[] the speaker of the alleged defamatory statements or the third-party recipient"

where she "allege[d] that the statements at issue were made by 'certain members of the Board,'" which did "not put Defendant on notice of which member or members made the statements at issue").

Finally, to the extent Plaintiff seeks to pursue a defamation claim based upon a statement to the police that she "committed a crime and refused to return money to which she knew she was not entitled," she has failed to plausibly allege that this was not substantially true. The statement is consistent with Plaintiff's allegations of what actually happened—that she received "an additional $850 from the Casino's cashier, that "Cotter[] telephoned [Plaintiff] and informed her that she had been overpaid by the Casino in the sum of $850.00 and sought repayment of the money to the Casino," and that Cotter "contacted [Plaintiff] again, and told [her] that she had committed larceny if she refused to return [the] money." (Dkt. No. 33-2, ¶¶ 19–21). Plaintiff does not allege that she returned the overpayment or that she was entitled to keep it. *See* N.Y. Penal Law § 155.05(2).

Accordingly, the Court grants Casino Defendants' motion for judgment on the pleadings as to Plaintiff's defamation claim.

## V.    CONCLUSION

For these reasons, it is hereby

**ORDERED** that Moore and Cotter's motion to dismiss (Dkt. No. 21) is **DENIED** in its entirety; and it is further

**ORDERED** that Saratoga Casino Holdings, LLC and Saratoga Casino Hotel's motion for judgment on the pleadings (Dkt. No. 28) is **GRANTED** as to the defamation claim; and it is further

**ORDERED** that Saratoga Casino Holdings, LLC and Saratoga Casino Hotel's motion for judgment on the pleadings (Dkt. No. 28) is otherwise **DENIED**; and it is further

**ORDERED** that Plaintiff's cross-motion to amend (Dkt. No. 33) is **DENIED** as futile with respect to Plaintiff's defamation claim against Casino Defendants; and it is further

**ORDERED** that Plaintiff's cross-motion to amend the complaint (Dkt. No. 33) is otherwise **GRANTED**; and it is further

**ORDERED** that Plaintiff's defamation claim as to Casino Defendants is **DISMISSED**; and it is further

**ORDERED** that Plaintiff shall file the proposed amended complaint by September 12, 2023.

**IT IS SO ORDERED.**

Dated: August 29, 2023
      Syracuse, New York

Brenda K. Sannes
Chief U.S. District Judge